EX PARTE ARÍSTIDES CASTRO LÓPEZ, Petitioner.

No. 115.   Argued March 23, 1939.—Decided May 11, 1939.

*Santos P. Amadeo*, for petitioner; *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for the Warden of the Insular Penitentiary.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The Juvenile Court of Ponce found Arístides Castro López, a minor under sixteen, guilty of the crime of voluntary homicide, and sentenced him to five years imprisonment in the Insular Penitentiary at Río Piedras, with the recommendation "that the said minor . . . should be kept apart from adult criminals, in such a way that it be impossible for said Arístides Castro López, who is a minor child, to associate with them or that they may exert influence over him . . . "

Judgment was rendered on November 25, 1938, and on March 18 last, the aforesaid minor filed before this Court a petition of Habeas Corpus wherein he claims that the mentioned judgment is null and void and that he is, therefore, illegally reprived of his liberty, for the following reasons:

"(a) Because the aforesaid judgment is in violation of Sections 21, 23, 25 and 33 of Act No. 37 of 1915, which creates a system of Courts for children, known as the Act of Juvenile Courts of Puerto Rico.

"(b) Because said judgment is in violation of the public policy ment upon the petitioner, who is a minor, according to the Act of lished by the Legislative Assembly of Puerto Rico by the approval of the aforesaid Act, and which consists not of punishing the delinquent minors like common criminals, but of educating and reforming them so that in the future they become good citizens.

"(c) Because the Juvenile Court of Ponce, when it passed judgment upon the petitioner, who is a minor, acording to the Act of Juvenile Courts, exceeded its discretion when it exercised its power as 'parens patriae' because the confinement of the petitioner in the Insular Penitentiary is against his welfare, because in the aforesaid institution the petitioner is in direct and indirect contact with grown-up criminals and besides his reform and education in the way decreed by Section 33 of the Juvenile Courts Act, are made impossible.

"(d) Because according to the aforesaid sections and the public policy established by the Legislature of Puerto Rico in relation to treatment of delinquent minors, the petitioner should have been confined in the Reform School at Mayagüez, so that there he might be reformed and educated as was the intention of the legislators when they passed the Act of Juvenile Courts."

The petitioner ends with a plea that this Court "following section 483, paragraph 5 of the Code of Criminal Procedure of Puerto Rico, annul the judgment delivered by the Juvenile Court of Ponce and in its stead render an order confining the petitioner in the Reform School at Mayagüez, and in case there be no vacancy in that institution, to confine him in the children's Ward adjunct to the Juvenile Court of Ponce, until he can enter the Reform School."

After both the petition, which was duly sworn, and Sections 469 and following of the Code of Civil Procedure were examined on March 20 last we issued a writ of Habeas Corpus to Sixto M. Saldaña, Warden of the Insular Penitentiary, wherein he was ordered to appear before this Court on the 23rd day of the same month, at two o'clock in the afternoon, at the hall of audience and to bring the petitioner with him, to pass upon the legality of his imprisonment.

At the stated date the Warden of the Insular Penitentiary appeared with the petitioner, represented by his attorney Mr. Santos P. Amadeo. From the petitioner's questioning of the Warden of the Insular Penitentiary, it follows that, in spite of his good intentions, he cannot absolutely assure that the minor, at a given moment, might not come in contact with the adult convicts, because there are no adequate means of effective absolute separation when both go to the school-rooms or the workshops.

The case was submitted to our judgment after the addresses of the petitioner's attorney and the prosecutor. The latter acquiesced to the issuance of the writ.

The rule of interpretation for the "Act to establish a system of Juvenile Courts, etc." approved March 11, 1915 (Session Laws, p. 71), is given to us by the legislator in Section 33 of the same law, which copied *verbatim* says:

"Section 33.—This Act shall be liberally construed to the end that its purposes may be carried out, such purposes being the protection and welfare of the child, and affording children the means of reforming, of receiving an education and of becoming law-abiding citizens.

In *Clemente* v. *Alvarez, Warden, etc.,* and *The People,* 50 P.R.R.___, this Court by its Associate Justice Mr. Travieso, who is at the same time the author of the aforesaid Act, makes a clear exposition of the main ideas which inspire the law. This Court said then:

"The fundamental purpose of the system of juvenile courts is to treat and consider minors under 16 years of age not as criminals but as wards of the State, which is obligated to reform and educate them in order to prevent them from continuing on the road of crime. For this reason the act provides that the hearing of the case shall be held in private; that the punishments imposed by law on adults shall be applied discretionally in the cases of juvenile delinquents; that the juvenile courts shall have the power set aside or suspend the execution of judgments; and that no order or judgment rendered by the court against a child shall be admitted as evidence in any civil or criminal proceeding against the same child.

"The greatest protection which the act affords the delinquent minor is contained in Section 23, which provides 'no child under sixteen (16) years of age shall be incarcerated in any common jail together with adult criminals therein confined,' with the evident purpose of avoiding the irreparable damage which would be caused the minor as the result of contact and association with persons already inured to crime."

Could the Judge of the Juvenile Court of Ponce, within the facts of this case, sentence the petitioner to serve five years imprisonment in the Insular Penitentiary at Río Piedras, despite the recommendation contained in the sentence as to the boy's isolation? That is the issue to be solved, in contemplation of the letter and spirit of the special law upon the matter.

Section 23 absolutely forbids that a minor under sixteen be confined in a common jail, in the company of adult criminals, and only so permits by way of exception, *"when his incarceration be absolutely necessary."* In this exceptional case, of absolute necessity, the law decrees that the confinement shall occur *"in a place separate from adult criminals, in such a manner as to make it impossible for the child to associate with or be influenced by such adult criminals."*

A convict of murder or homicide, by disposition of law, can not be confined in the Reform School. That excluded, the Judge of the Juvenile Court had no choice but to confine the petitioner in the minor's ward adjunct to the Ponce District Jail or send him to the Insular Penitentiary. Knowing as he undoubtedly knows the condition of the children's ward, he decided that the Insular Penitentiary offered greater advantages, on account of its ample and well equipped workshops where the child could learn a trade, and also on account of the prison school where he could learn the principles of primary education. He chose the latter institution, and ordered the minors confinement therein, after ordering that all care should be taken to prevent his contact with adult criminals.

As in this case the petitioner is a minor, and therefore we bear the responsibility as "parens patriae", we thought our duty was to make a personal investigation and ascertain the true conditions of the minor's situation and the advantages which might really be offered by the Insular Penitentiary. To serve our purpose, both Mr. Justice Travieso and myself, with the knowledge and approval of the Court, visited the Insular Penitentiary, and were able to verify that therein exists a ward apart from the rest of the building, devoted exclusively to minors under twenty-one years, now exceeding eighty in number, and that among these some are not yet sixteen years old. That these minors attend school some hours every day, and during other hours go to the difrent workshops, and that while they are at one or the other place they are in the charge of the school-teacher or shop foreman, and at the same time are accompanied by trusted prisoners whose business it is to prevent their contact with adult convicts.

It is a matter of general knowledge that the District Jail of Ponce, like all others in the island, does not have the conveniences, the shops, the schoolrooms, that the Insular Penitentiary has. Under these conditions we harbor no doubt that the Judge of the Juvenile Court of Ponce acted correctly, looking after the minor's welfare, following the aforesaid ends and purposes of the Act of Juvenile Courts, and therefore we must conclude that the petitioner's imprisonment is not illegal.

*It follows, for the reasons stated above, that the petition of Habeas Corpus must be dismissed, and an order issued that the petitioner remains confined in the Insular Penitentiary under the same conditions that he now is, until his term of imprisonment expires, or something else is decreed according to law.*